## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| **COMMODITY FUTURES TRADING COMMISSION,**<br><br>**Plaintiff,**<br><br>v.<br><br>**JEFFREY A. ROYER,**<br><br>**Defendant.** | Case No.   **2:24-cv-12714**<br><br>**COMPLAINT FOR INJUNCTIVE AND OTHER EQUITABLE RELIEF, RESTITUTION, AND CIVIL MONETARY PENALTIES UNDER THE COMMODITY EXCHANGE ACT** |

Plaintiff, Commodity Futures Trading Commission ("CFTC" or "Commission"), by and through its attorneys, alleges as follows:

## I.   SUMMARY

1.     From at least 2019 to the present (the "Relevant Period"), Jeffrey Royer ("Royer"), engaged, and continues to engage, in a fraudulent scheme through which Royer individually solicited and accepted over $1 million from at least 23 individuals ("pool participants") to invest in a commodity pool operated by Royer ("commodity pool" or "the Pool"). The purported purpose of the Pool was to trade in foreign currency pairs on a leveraged, margined, or financed basis ("retail forex").  The Pool was not an eligible contract participant as defined by the

relevant portions of the Commodity Exchange Act (the "Act") because most, if not all, of the pool participants were individuals who were not eligible contract participants ("ECPs").

2.      While acting as an unregistered commodity pool operator ("CPO"), Royer made material misrepresentations to pool participants about, among other things, profit potential, lack of risk, and how the funds would be used.  In addition, Royer made material omissions including, but not limited to, his prior criminal conviction for securities fraud.

3.      Rather than use the funds as promised to pool participants, Royer misappropriated the funds by either using them for his own personal use, or using deposits of one customer to pay another, in a manner akin to a Ponzi scheme.

4.      To perpetuate his fraud, Royer sent pool participants falsified account documents purporting to represent profits from Royer's "successful" trading.

5.      In addition, Royer comingled pool participant funds with his own, accepted money into his personal bank accounts, and failed to operate the pool as a separate cognizable entity.

6.      By this conduct, and the conduct further described herein, Royer has engaged, is engaging, and/or is about to engage in acts and practices in violation of Sections 2(c)(2)(C)(iii)(I)(cc), 4b(a)(2)(A)-(C), 4m(1), and 4$o$(1)(A)-(B) of the Commodity Exchange Act, (the "Act"), 7 U.S.C. §§ 2(c)(2)(C)(iii)(I)(cc),

6b(a)(2)(A)-(C), 6m(1), 6*o*(1)(A)-(B), and Commission Regulations

("Regulations") 4.20(a)(1), (b), and (c), and 5.2(b)(1)-(3), 5.3(a)(2)(i), 17 C.F.R.

§§ 4.20(a)(1), (b), (c), 5.2(b)(1)-(3), 5.3(a)(2)(i) (2023).

7.     Accordingly, pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1, the

CFTC brings this action to enjoin Royer's unlawful acts and practices and to

compel compliance with the Act and the Regulations promulgated thereunder.  In

addition, the CFTC seeks restitution, civil monetary penalties, and remedial

ancillary relief, including, but not limited to, trading and registration bans,

disgorgement, rescission, post-judgment interest, and such other and further relief

as the Court deems necessary and appropriate.

8.     Unless restrained and enjoined by this Court, Royer will likely

continue to engage in acts and practices alleged in this Complaint and similar acts

and practices, as described below.

## II.     <u>JURISDICTION AND VENUE</u>

9.     This Court possesses jurisdiction over this action pursuant to

28 U.S.C. § 1331 (codifying federal question jurisdiction) and 28 U.S.C. § 1345

(providing that U.S. district courts have original jurisdiction over civil actions

commenced by the United States or by any agency expressly authorized to sue by

act of Congress).  In addition, Section 6c(a) of the Act, 7 U.S.C. § 13a-1(a),

provides that U.S. district courts possess jurisdiction to hear actions brought by the

CFTC for injunctive relief or to enforce compliance with the Act whenever it shall appear that such person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of any provision of the Act or any rule, regulation, or order thereunder.

10.     Venue lies properly with this Court pursuant to Section 6c(e) of the Act, 7 U.S.C. § 13a-1(e), because certain transactions, acts, practices, and courses of business alleged in this Complaint occurred, are occurring, or are about to occur in this District.

### III.   THE PARTIES

11.     Plaintiff **Commodity Futures Trading Commission** is an independent federal regulatory agency charged by Congress with the administration and enforcement of the Act, 7 U.S.C. §§ 1-26, and the Regulations promulgated thereunder, 17 C.F.R. pts. 1–190 (2023).

12.     **Jeffrey Royer** resides in Montrose, Colorado.  Royer has never been registered with the Commission in any capacity.  In 2005, Royer was convicted of conspiracy to commit racketeering and securities fraud, securities fraud, obstruction of justice, and witness tampering.  In 2006, Royer received a seventy-two-month prison sentence.  Royer completed his sentence and was released in February 2012.

## IV.   <u>FACTS</u>

### A. The Fraudulent Scheme

#### 1. Royer's Fraudulent Solicitations to Pool Participants, False Statements, and Misappropriation

13.    Beginning in at least 2019, Royer solicited members of the public in the Eastern District of Michigan and elsewhere to participate in a commodity pool Royer operated for the purpose of trading in retail forex.

14.    Many of the individuals Royer solicited, and who ultimately became participants in Defendant's pool, were not ECPs, and the pool participants had little to no experience trading retail forex, or any other financial instrument.

15.    Throughout the Relevant Period, Defendant solicited prospective pool participants through direct, person-to-person solicitations and referrals from existing pool participants.  Defendant represented to actual and prospective pool participants that he would pool their funds into a trading account in Royer's own name.

16.    Royer told pool participants that some amount of profit was guaranteed.  For example, he told pool participants to expect approximately 3-10% in monthly profits, and told one participant, "If you want to get rich, invest with me."  In fact, Royer routinely failed to achieve anything close to his guaranteed returns; frequently his trading lost money each month.

17.    Royer represented to pool participants that the funds the participants

5

initially invested, "seed money", protected from loss because Royer would not "get into" the seed money in his trading. Further, Royer claimed to pool participants that if he did have to trade the seed money, he had his own "account" from which he would reimburse investors of their seed funds.  This guarantee of funds also turned out to be false.

18.     Royer also falsely represented that he had a life insurance policy that protected the pool participants' funds.

19.     Royer further falsely represented to pool participants that they could make withdrawals from their profits as needed, and that he would pay the taxes on the profits from the Pool as a "thank you" to the group.

20.     Based on these misrepresentations, at least 23 pool participants sent $1,012,151 to Royer for the purpose of trading retail forex in a pool.  Rather than have the pool participants send their funds directly to an account in the name of the pool, Royer accepted pool participants' funds directly into personal accounts in Royer's name.  He then transferred $916,677 of pool participant funds into his personal trading account at Gain Capital, a Futures Commission Merchant.  The remaining pool participant funds never were deposited into a trading account.

21.     During the Relevant Period, Royer traded and lost $378,116 at Gain Capital.  He never achieved the guaranteed track record of 3-10% per month, as promised to pool participants.  He withdrew $538,523 from his trading account and

deposited these withdrawn funds into his personal accounts.  Defendant used some of these funds for personal expenses, and other funds to pay pool participants and perpetuate his fraud.

22.    After accepting participants' funds, Defendant provided pool participants with monthly emails sent through the Internet that purportedly represented trading profits for each pool participant's funds.  The statements were false.

23.    During the relevant period, of the more than $1 million that Royer solicited, he traded and lost $378,116, made Ponzi style payments to pool participants and used pool participant funds to pay personal expenses, such as his personal credit cards and the mortgage on his home.

24.    In October of 2022, Defendant told pool participants via email that there were continuing "liquidity issues" with the platform he was using to trade, resulting in limited ability to make withdrawals.  This was, in fact, a ruse to cover his misappropriation and trading losses.

25.    In late 2022, Royer stated that he would send pool participants "sporadic amounts" as funds became available to those who requested withdrawals.  Defendant stopped all trading in December 2022, but continued to mislead pool participants by representing that the issue was with the platform.  For several months, Royer continued to falsely report to pool participants that the

money was still in the accounts, but he was unable to access it.

26.    By June 2023, Defendant told pool participants in an email that the money was "gone" as a result of Royer's poor management of the funds, but that he planned to return at least the participants' initial investment, when he was able to do so.  Defendant continued to email participants for months afterwards, assuring them that he was planning to make the participants whole.

## 2. Omissions of Material Facts

27.    In furtherance of the fraudulent scheme, Defendant made fraudulent omissions of material facts to actual and potential pool participants including, but not limited to, failing to disclose that:

(a) Royer used pool participants' funds for purposes other than retail forex trading, including, but not limited to paying Royer's personal credit cards, Royer's personal mortgage payments, and paying other pool participants' returns;

(b) Royer had been convicted for securities fraud and other charges in 2005 and sentenced to seventy-two months in prison in 2006; and

(c) Royer's trading was not profitable, and the "account

statements" he provided to pool participants were not

reflective of actual trading losses.

28.    Defendant's omissions of facts were, and are, material.

### 3. Commingling Pool Funds

29.    Rather than accept pool participant funds into a separate pool account,

Defendant commingled pool participant funds with his own funds in his personal

bank and financial accounts.  He then transferred these commingled funds into his

personal retail forex trading account at Gain Capital.

### 4. Failure to Register

30.    Throughout the Relevant Period, Defendant acted as a CPO by

soliciting, accepting, and receiving funds from the public while engaged in a

business that was, and is, of the nature of an investment trust, syndicate, or similar

form of enterprise, for the purpose of trading in retail forex, without being

registered with the Commission as a CPO.

31.    At no time during the Relevant Period has Defendant sought an

exemption from the requirement to register with the Commission as a CPO.  At no

time during the Relevant Period has Royer qualified for an exemption from the

requirement to register with the Commission as a CPO.

## V.     VIOLATIONS OF THE COMMODITY EXCHANGE ACT AND CFTC REGULATIONS

### COUNT ONE
### Violations of Section 4b(a)(2)(A)-(C) of the Act, 7 U.S.C. §6b(a)(2)(A)-(C), and Regulation 5.2(b)(1)-(3), 17 C.F.R. § 5.2(b)(1)-(3) (2023) (Fraud in Connection with Retail Forex)

32.     7 U.S.C. § 6b(a)(2)(A)-(C) makes it unlawful:

for any person, in or in connection with any order to make, or the making of, any contract of sale of any commodity for future delivery that is made, or to be made, for or on behalf of, or with, any other person, other than on or subject to the rules of a designated contract market:

(A) to cheat or defraud or attempt to cheat or defraud the other person;

(B) willfully to make or cause to be made to the other person any false report or statement or willfully to enter or cause to be entered for the other person any false record; or

(C) willfully to deceive or attempt to deceive the other person by any means whatsoever in regard to any order or contract or the disposition or execution of any order or contract, or in regard to any act of agency performed, with respect to any order or contract for . . . the other person.

33.     Section 2(c)(2)(C) of the Act, 7 U.S.C. § 2(c)(2)(C), and in particular 7 U.S.C.2(c)(2)(C)(i)(I), encompasses, subject to certain exceptions that do not apply here, agreements, contracts, or transactions in retail forex that are: (i) offered to, or entered into with, a person that is not an ECP; and (ii) offered, or entered

into, on a leveraged or margined basis, or financed by the offeror or counterparty, or by a person acting in concert with the offeror or counterparty.

34.     Pursuant to Section 2(c)(2)(C)(iv) of the Act, 7 U.S.C. § 2(c)(2)(C)(iv), 7 U.S.C. § 6b applies to the retail forex agreements, contracts, or transactions offered by Royer "as if" they were contracts of sale of a commodity for future delivery.  Additionally, Section 2(c)(2)(C)(ii)(I) of the Act, 7 U.S.C. § 2(c)(2)(C)(ii)(I), makes retail forex transactions, agreements, or contracts described in Section 2(c)(2)(C)(i) of the Act, 7 U.S.C. §2(c)(2)(C)(i), and accounts or pooled investment vehicles described in Section 2(c)(2)(C)(vii) of the Act, 7 U.S.C. § 2(c)(2)(C)(vii), "subject to" Section 4b, 7 U.S.C. § 6b.  Furthermore, 7 U.S.C. § 2(c)(2)(C)(vii) states that the CFTC has jurisdiction over an account or pooled investment vehicle that is offered for the purpose of trading retail forex described in Section 2(c)(2)(C)(i) of the Act.

35.     Regulation 5.2(b)(1)-(3) makes it unlawful:

> for any person, by use of the mails or by any means or instrumentality of interstate commerce, directly or indirectly, in or in connection with any retail forex transaction:
>
> (1) to cheat or defraud or attempt to cheat or defraud any person;
>
> (2) willfully to make or cause to be made to any person any false report or statement or cause to be entered for any person any false record; or

(3) willfully to deceive or attempt to deceive any person by any means whatsoever.

36.   As described in paragraphs 1-4, 12-28, and 32-25, Royer, in violation of 7 U.S.C. § 6b(a)(2)(A)-(C) and 17 C.F.R. § 5.2(b)(1)-(3), cheated or defrauded, or attempted to cheat or defraud, actual and prospective pool participants; willfully made, or caused to be made, false account statements; and willfully deceived, or attempted to deceive, actual and prospective pool participants in connection with Royer's Pool that offered, or entered into, retail forex by, among other things:

(i)     misappropriating pool participants' funds;

(ii)    making fraudulent misrepresentations and omissions of material facts including, but not limited to, falsely representing the safety of investing money in the Pool and the surety of investment returns, and failing to disclose Royer's criminal history; and

(iii)   creating false account statements showing purported profits not reflective of actual trading.

37.   Each omission or misrepresentation of a material fact, false statement, and act of deceiving pool participants or misappropriation made during the Relevant Period in connection with off-exchange leveraged, margined or financed retail forex transactions with non ECPs, including, but not limited to, those

12

specifically alleged herein, is alleged as a separate and distinct violation of 7

U.S.C. § 6b(a)(2)(A)-(C) and 17 C.F.R. § 5.2(b)(1)-(3).

## COUNT TWO
### Violations of Section 4*o*(1)(A)-(B) of the Act, 7 U.S.C. § 6*o*(1)(A)-(B)
### (Fraud by a CPO)

38.    The allegations set forth in paragraphs 1-4, 7-8, and 9-28 are re-

alleged and incorporated herein by reference.

39.    A CPO is defined in Section 1a(11) of the Act, 7 U.S.C. § 1a(11), as

"any person . . . engaged in a business that is of the nature of a commodity pool,

investment trust, syndicate, or similar form of enterprise, and who, in connection

therewith, solicits, accepts or receives from others, funds, securities, or property

either directly or through capital contributions . . . for the purpose of trading in

commodity interests, including any . . . agreement, contract, or transaction

described in Section 2(c)(2)(C)(i)."

40.    Throughout the Relevant Period, Royer acted as a CPO by soliciting,

accepting, or receiving funds from others for the purpose of trading commodity

interests in a pooled investment vehicle.

41.    7 U.S.C. § 6*o*(1)(A)-(B) prohibits CPOs whether registered with the

CFTC or not, "by use of the mails or any means or instrumentality of interstate

commerce, directly or indirectly . . . (A) to employ any device, scheme, or artifice

to defraud any client or participant or prospective client or participant; or (B) to

engage in any transaction, practice, or course of business which operates as a fraud or deceit upon any client or participant or prospective client or participant."

42.   7 U.S.C. § 2(c)(2)(C)(ii)(I), makes retail forex transactions, agreements, or contracts described in Section 2(c)(2)(C)(i) of the Act, 7 U.S.C. §2(c)(2)(C)(i), and accounts or pooled investment vehicles described in Section 2(c)(2)(C)(vii) of the Act, 7 U.S.C. § 2(c)(2)(C)(vii), "subject to" Section 4*o*, 7 U.S.C. § 6*o*.  Additionally, 7 U.S.C. § 2(c)(2)(C)(vii) states that the CFTC has jurisdiction over an account or pooled investment vehicle that is offered for the purpose of trading retail forex described in Section 2(c)(2)(C)(i) of the Act.

43.   As alleged in paragraphs 1-4, 12-28, and 38-42 , Royer, in violation of 7 U.S.C. § 6*o*(1)(A)-(B), employed a device, scheme, or artifice to defraud actual and prospective participants or engaged or is engaging in transactions, practices, or a course of business which operated or operates as a fraud or deceit upon any actual or prospective participant, including, among other things:

(i) misappropriating pool participants' funds;

(ii) making fraudulent misrepresentations; and omissions of material facts including, but not limited to, falsely representing the safety of investing money in the Pool and the surety of investment returns, and failing to disclose Royer's criminal history.

14

(iii)     creating false account statements showing

purported profits not reflective of actual trading,

44.    Each omission of material fact, false statement, act of

misappropriation, employment of a device, scheme, or artifice to defraud, and

transaction, practice, or course of business which operated as a fraud or deceit

made during the Relevant Period, including, but not limited to, those specifically

alleged herein, is alleged as a separate and distinct violation of 7 U.S.C.

§ 6*o*(1)(A)-(B).

### COUNT THREE
**Violations of Regulations 4.20(a)(1), (b) and (c),**
**17 C.F.R. § 4.20(a)(1), (b), (c), (2023)**
**(Failure to Operate Commodity Pool as a Separate Legal Entity, Failure to**
**Receive Funds in the Pool's Name, and Commingling of Pool Funds)**

45.    The allegations set forth in  paragraphs 1-2, 5, 7-12, and 29-31 are re-

alleged and incorporated herein by reference.

46.    A CPO is defined in 7 U.S.C. § 1a(11), as "any person . . . engaged in

a business that is of the nature of a commodity pool, investment trust, syndicate,

or similar form of enterprise, and who, in connection therewith, solicits, accepts or

receives from others, funds, securities, or property either directly or through

capital contributions . . . for the purpose of trading in commodity interests,

including any . . . agreement, contract, or transaction described in Section

2(c)(2)(C)(i)."

47.     A CPO is further defined in 17 C.F.R. § 5.1(d)(1) as "any person who operates or solicits funds, securities, or property for a pooled investment vehicle that is not an eligible contract participant as defined in section 1a(18) of the Act, and that engages in retail forex transactions."

48.     Regulation 5.4, 17 C.F.R. § 5.4 (2023), states that part 4 of the Regulations, 17 C.F.R. pt. 4 (2023), applies to any person required pursuant to 17 C.F.R. pt. 5 to register as a CPO, and that "[f]ailure by any such person to comply with the requirements of part 4 will constitute a violation of this section and the relevant section of part 4."

49.     Royer acted as an unregistered CPO by engaging in a business that was in the nature of a commodity pool, investment trust, syndicate, or similar enterprise, and in connection therewith, solicited, accepted, or received from others, funds, securities, or property, either directly or otherwise, for the purpose of trading retail forex.

50.     17 C.F.R. § 4.20(a)(1) requires a CPO to operate his or her commodity pool as an entity cognizable as a legal entity separate from that of the pool operator, with certain specified exceptions not applicable here.

51.     Throughout the Relevant Period, Royer, while acting as a CPO, violated 17 C.F.R. §§ 4.20(a)(1) and 5.4 by failing to operate the commodity pool

as a legal entity separate from itself.

52.    17 C.F.R. § 4.20(b) provides: "All funds, securities or other property received by a commodity pool operator from an existing or prospective pool participant for the purchase of an interest or as an assessment (whether voluntary or involuntary) on an interest in a pool that it operates or that it intends to operate must be received in the pool's name."

53.    During the Relevant Period, Royer, while acting as a CPO, violated 17 C.F.R. §§ 4.20(b) by receiving funds from existing or prospective pool participants for the purchase of an interest in the Pool without receiving the same in the Pool's name.

54.    17 C.F.R. § 4.20(c) provides: "No commodity pool operator may commingle the property of any pool that it operates or that it intends to operate with the property of any other person."

55.    During the Relevant Period, Royer, while acting as a CPO, violated 17 C.F.R. §§ 4.20(c) by commingling Pool funds with the personal funds of Royer and other pool participants.

### COUNT FOUR
**Violations of Sections 2(c)(2)(C)(iii)(I)(cc), and 4m(1) of the Act,
7 U.S.C. §§ 2(c)(2)(C)(iii)(I)(cc), 6m(1), and
Regulations 5.3(a)(2)(i) , 17 C.F.R. § 5.3(a)(2)(i) (2023)
(Failure to Register as a CPO)**

56.    The allegations set forth in paragraphs 1-2, 5, 7-12, and 30-31 are re-

alleged and incorporated herein by reference.

57.    A CPO is defined in 7 U.S.C. § 1a(11), as "any person . . . engaged in

a business that is of the nature of a commodity pool, investment trust, syndicate,

or similar form of enterprise, and who, in connection therewith, solicits, accepts or

receives from others, funds, securities, or property either directly or through

capital contributions . . . for the purpose of trading in commodity interests,

including any . . . agreement, contract, or transaction described in Section

2(c)(2)(C)(i)[.]"

58.    A CPO is further defined in 17 C.F.R. § 5.1(d)(1), as "any person who

operates or solicits funds, securities, or property for a pooled investment vehicle

that is not an eligible contract participant as defined in section 1a(18) of the Act,

and that engages in retail forex transactions."

59.    7 U.S.C. § 6m(1) makes it unlawful for any CPO, unless registered

with the CFTC, to make use of the mails or any means or instrumentality of

interstate commerce in connection with its business as a CPO.  Similarly,

17 C.F.R. § 5.3(a)(2)(i) requires anyone acting as a CPO for a pooled investment

vehicle that engages in retail forex to register as a CPO.

60.    Subject to certain exceptions not relevant here, 7 U.S.C.

§ 2(c)(2)(C)(iii)(I)(cc), states in part, that:

> A person, unless registered in such capacity as the
> Commission by rule, regulation, or order shall determine

and a member of a futures association registered under
section 17, shall not . . .

    . . . .

(cc) operate or solicit funds, securities, or property for any
pooled investment vehicle that is not an eligible contract
participant in connection with [applicable retail forex
agreements, contracts, or transactions].

61.   Except in circumstances not relevant here, 7 U.S.C.

§ 2(c)(2)(C)(iii)(I)(cc) and 17 C.F.R. § 5.3(a)(2)(i) require those that meet the

definition of a retail forex CPO under 17 C.F.R. § 5.1(d)(1) to register as a CPO

with the Commission.

62.   During the Relevant Period, Royer acted as an unregistered CPO by

engaging in a business that was in the nature of a commodity pool, investment

trust, syndicate, or similar enterprise, and in connection therewith, solicited,

accepted, or received from others, funds, securities, or property, either directly or

otherwise, for the purpose of trading retail forex, while failing to register with the

Commission as a CPO in violation of 7 U.S.C. §§ 2(c)(2)(C)(iii)(I)(cc) and 6m(1)

and 17 C.F.R. § 5.3(a)(2)(i).

63.   During the Relevant Period, Royer was not exempt from registration

as a CPO.

64.   Each instance during the Relevant Period in which Royer acted as an

unregistered CPO, including but not limited to those specifically alleged herein, is

alleged as a separate and distinct violation of 7 U.S.C. §§ 2(c)(2)(C)(iii)(I)(cc) and

6m(1) and 17 C.F.R. § 5.3(a)(2)(i).

## VI.    RELIEF REQUESTED

WHEREFORE, the Commission respectfully requests that this Court, as

authorized by 7 U.S.C. § 13a-1, and pursuant to its own equitable powers, enter:

A.    An order finding that Royer violated and are violating Sections

2(c)(2)(C)(iii)(I)(cc), 4b(a)(2)(A)-(C), 4m(1), and 4*o*(1)(A)-(B) of the Act,

7 U.S.C. §§ 2(c)(2)(C)(iii)(I)(cc),  6b(a)(2)(A)-(C), 6m(1), 6*o*(1)(A)-(B), and

Regulations 4.20(a)(1), (b), and (c), 5.2(b)(1)-(3), 5.3(a)(2)(i), 17 C.F.R.

§§ 4.20(a)(1), (b), 5.2(b)(1)-(3), 5.3(a)(2)(i) (2023);

B.    An order of permanent injunction restraining, enjoining and

prohibiting Royer and any other person or entity in active concert with them, from

engaging in conduct in violation of 7 U.S.C. §§ 2(c)(2)(C)(iii)(I)(cc), 6b(a)(2)(A)-

(C), 6m(1), and 6*o*(1)(A)-(B), and 17 C.F.R. §§ 4.20(a)(1), (b), and (c),

5.3(a)(2)(i), 5.2(b)(1)-(3);

C.    An order of permanent injunction prohibiting Royer and any other

person or entity in active concert with them from, directly or indirectly:

   1)  Trading on or subject to the rules of any registered entity (as that

       term is defined by Section 1a(40) of the Act, 7 U.S.C. § 1a(40));

   2)  Entering into any transactions involving "commodity interests" (as

       that term is defined in Regulation 1.3, 17 C.F.R. § 1.3 (2023)), for

accounts held in the name of Royer or for accounts in which Royer have a direct or indirect interest;

3) Having any commodity interests traded on Royer's behalf;

4) Controlling or directing the trading for, or on behalf of any other person or entity, whether by power of attorney or otherwise, in any account involving commodity interests;

5) Soliciting, receiving, or accepting any funds from any person for the purpose of purchasing or selling of any commodity interests;

6) Applying for registration or claiming exemption from registration with the CFTC in any capacity, and engaging in any activity requiring such registration or exemption from registration with the Commission, except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2023); and

7) Acting as a principal (as that term is defined in Regulation 3.1(a), 17 C.F.R. § 3.1(a) (2023)), agent, or any other officer or employee of any person registered, exempted from registration, or required to be registered with the Commission except as provided for in 17 C.F.R. § 4.14(a)(9) (2023);

D. An order requiring Royer, as well as any successors thereof, to disgorge, pursuant to such procedures as the Court may order, all benefits received

21

including, but not limited to, salaries, commissions, loans, fees, revenues, and trading profits derived, directly or indirectly, from acts or practices which constitute violations of the Act and Regulations as described herein, including post-judgment interest;

E.      An order requiring Royer, as well as any successors thereof, to make full restitution, pursuant to such procedures as the Court may order, to every person or entity who sustained losses proximately caused by Royer's violations described herein, including post-judgment interest;

F.      An order directing Royer, as well as any successors thereof, to rescind, pursuant to such procedures as the Court may order, all contracts and agreements, whether implied or express, entered into between them and any of the participants whose funds were received by Royer as a result of the acts and practices that constituted violations of the Act and Regulations, as described herein;

G.      An order directing Royer, as well as any successors thereof, to pay a civil monetary penalty, to be assessed by the Court, in an amount not to exceed the penalty prescribed by 7 U.S.C. § 13a-1(d)(1)), as adjusted for inflation pursuant to the Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015, Pub. L. 114-74, tit. VII, § 701, 129 Stat. 584, 599-600, *see* 17 C.F.R. § 143.8

(2023), or subsequent annually adjusted amounts, for each violation of the Act and Regulations, as described herein;

H.      An order directing that Royer, and any successors thereof, make an accounting to the Court of all of their assets and liabilities, together with all funds they received from and paid to participants and other persons in connection with commodity interests and all disbursements for any purpose whatsoever of funds received from commodity interests, including salaries, commissions, interest, fees, loans, and other disbursement of money or property of any kind from at least January 1, 2019 to the date of such accounting;

I.      An order requiring Royer, and any successors thereof, to pay costs and fees as permitted by 28 U.S.C. §§ 1920 and 2413(a)(2); and

J.      Such other and further relief as this Court may deem necessary and appropriate under the circumstances.


Dated:  October 15, 2024                    Respectfully submitted,

                                            /s/ James H. Holl, III
                                            James H. Holl, III
                                            Chief Trial Attorney
                                            D.C. Bar No. 453473
                                            202-418-5311
                                            jholl@cftc.gov

Kelly M. Folks
Trial Attorney
VA Bar No. 72124
202-418-5377
kfolks@cftc.gov

Cara A. Gardner
Trial Attorney
D.C. Bar No. 1003793
202-418-5579
cgardner@cftc.gov


Commodity Futures Trading
Commission
Division of Enforcement
1155 21st Street, NW,
Washington, D.C. 20581
Telephone: (202) 418-5000
Fax: (202) 418-5531

*Attorneys for Plaintiff*


Counsel to Receive Notice

Kevin Erskine
Assistant United States Attorney
Civil Division Chief
Office of the United States Attorney
Eastern District of Michigan
211 West Fort Street
Suite 2001
Detroit, Michigan 48226
kevin.erskine@usdoj.gov
(313) 226-9100